UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

———————————————————

RAYMOND L. SEMLER,                                    Civil No. 11-854 (JNE/LIB)

       Petitioner,

   v.                                                      **REPORT AND RECOMMENDATION**

LUCINDA JESSON, Commissioner of
Dept. of Human Services, and
DENNIS BENSON, CEO of Minnesota
Sex Offender Program, (MSOP),

      Respondents.

———————————————————

    This matter is before the undersigned United States Magistrate Judge on Petitioner's

application for a writ of habeas corpus under 28 U.S.C. § 2254.  The case has been

referred to this Court for report and recommendation pursuant to 28 U.S.C. § 636 and Local

Rule 72.1.  For the reasons discussed below, the Court finds that Petitioner's habeas

corpus petition is barred by the statute of limitations prescribed by 28 U.S.C. § 2244(d)(1).

The Court will therefore recommend that this action be summarily dismissed with prejudice

pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District

Courts.[1]

## I.  BACKGROUND

    Petitioner is a civilly committed sex offender who is presently being detained as a

patient at the Minnesota Sex Offender Program in Moose Lake, Minnesota.  In this habeas

corpus proceeding, Petitioner is <u>not</u> challenging the judgment in the state civil commitment

---

[1]  Rule 4 provides that "[i]f it plainly appears from the petition and any attached
exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss
the petition and direct the clerk to notify the petitioner."

proceedings that has caused his current confinement.   Instead, he is challenging a

judgment entered against him in a 1997 state court criminal case.

In the criminal case at issue, a Minnesota state court jury found Petitioner guilty of

fourth degree criminal sexual conduct.[2]  He was sentenced to 42 months in prison, but his

sentence was stayed.  His sentence also included 50 years of supervised probation.[3]

---

[2]   The Minnesota Court of Appeals later summarized the facts giving rise to Petitioner's conviction as follows:

> On July 25, 1996, M.N. was biking up a hill when she noticed a blue truck pass her in the opposite direction.  As M.N. started her descent, the truck began circling her and then appeared to drive away.  When M.N. reached the bottom of the hill, she noticed a man standing in the middle of the road whom she later identified as the driver of the truck.  She tried to swerve around him, but he stepped in front of her and pulled her off the bike.  The man put his arm around her waist and grabbed her breast.
>
> Seconds later, Michael Strey came riding along on a three-wheeler.  When the driver saw Strey, he released M.N. and walked away.  M.N. immediately ran up to Strey and told him that she needed help.  Strey asked her if she knew the man who attacked her, and she said she did not.  Strey said he had known the man from church and identified him as [Petitioner]."

State v. Semler, No. C7-97-1686 (Minn.App. 1998), 1998 WL 422187 (unpublished opinion) at *1, rev. denied, Sept. 22, 1998.

[3]  Petitioner's 42-month prison sentence is disclosed in his current petition. (Petition, [Docket No. 1], p. 1, § 3.)  The 50-year term of supervised probation is disclosed in a decision by the Minnesota Court of Appeals pertaining to a subsequent revocation of that probation.  See State v. Semler, No. A06-2093 (Minn.App. 2008), 2008 WL 73235 (unpublished opinion) at * 1.  The Court of Appeals initially set aside the revocation of Petitioner's probation, because the trial court had not made proper findings to support the revocation.  Id. at *3.  However, the revocation of Petitioner's probation was reinstated following a remand from the Court of Appeals, and that later revocation was upheld in a subsequent appeal.  State v. Semler, No. A08-590 (Minn.App. 2009), 2009 WL 749562 (unpublished opinion), rev. denied, May 9, 2009.

For now, the Court will assume that Petitioner is still subject to the terms and conditions of his 50-year probation term, and that he is therefore still considered to be "in custody" for his 1997 state criminal conviction, for purposes of 28 U.S.C. § 2254(a).  See

After Petitioner was convicted and sentenced he filed a direct appeal, in which he argued that (1) the prosecution wrongly failed to disclose that the victim had identified Petitioner during a pre-trial photo line-up, and (2) the trial court erroneously required Petitioner to submit to polygraph tests at his own expense as a condition of probation.  The Minnesota Court of Appeals rejected Petitioner's arguments on the merits, and upheld his conviction and sentence.  State v. Semler, No. C7-97-1686 (Minn.App. 1998), 1998 WL 422187 (unpublished opinion).  The Minnesota Supreme Court denied Petitioner's application for further review on September 22, 1998.  Id.

Although Petitioner's 42-month sentence in his 1997 state criminal case was stayed, he later served at least part of that sentence in prison, because he violated the conditions of the stay.  When Petitioner was about to be released from prison in 2005, the State of Minnesota commenced a civil commitment action against him.  He was found to be a "sexually dangerous person" under Minnesota law, and he was civilly committed for an indeterminate term.  In re Civil Commitment of Semler, No. A06-2213 (Minn. App. 2007), 2007 WL 969081 (unpublished opinion), rev. denied, May 30, 2007.

On September 28, 2005, Petitioner filed his first state post-conviction motion challenging the validity of his 1997 state criminal conviction.  (Petitioner's Exhibits, [Docket No. 6], pp. 11, 43.[4])  That motion was denied on November 7, 2005, and Petitioner's

_____

Barks v. Armontrout, 872 F.2d 237, 238 (8th Cir. 1989) (habeas petitioner is considered to be "in custody" if he is still on probation when he files his petition) (citing Jones v. Cunningham, 371 U.S. 236, 243 (1963)).

[4] Petitioner has filed several exhibits in support of his current habeas corpus petition, which provide information about relevant state court proceedings that preceded the current petition.  Petitioner did not paginate his exhibits, but they were paginated when they were filed by the Clerk's Office.  Therefore, the Court's citations to Petitioner's exhibits

subsequent motion for reconsideration was denied on December 12, 2005. (Affidavit of Raymond Semler dated May 12, 2011, [Docket No. 7], [hereafter "Semler Aff."], p. 1, ¶ 3.) Petitioner did not appeal the trial court's denial of his first post-conviction motion. (Id.)

Petitioner filed his second state post-conviction motion on August 8, 2006. (Petitioner's Exhibit, p. 12.) That motion was denied on August 25, 2006, (id., pp. 13, 42), and Petitioner did not appeal that ruling, (Semler Aff., p. 1, ¶ 3).

Petitioner filed a third state post-conviction motion on June 13, 2007. (Id.) That motion was still pending before the state trial court judge when Petitioner filed his fourth post-conviction motion on June 28, 2010. (Id., p. 2, ¶s 5-6.) Petitioner's fourth motion apparently raised the same claims as those presented in the third motion, and the trial court therefore conflated the third and fourth motions, and denied them in a single order dated July 8, 2010. (Petitioner's Exhibits, pp. 11-15.) Petitioner appealed that order, and the Minnesota Court of Appeals then reviewed the trial court's ruling on the third and fourth post-conviction motions in a single appeal. On January 19, 2011, the Minnesota Court of Appeals entered an unpublished "Order Opinion," which affirmed the trial court's denial of Petitioner's third and fourth post-conviction motions. (Id., pp. 16-19.) The Minnesota Supreme Court denied Petitioner's application for further review of that ruling on March 29, 2011. (Semler Aff., p. 2, ¶ 6.)

Petitioner's current habeas corpus petition is dated April 4, 2011, and it was filed by the Clerk of Court on April 7, 2011. For present purposes, the petition is deemed to have been filed on April 4, 2011. See Nichols v. Bowersox, 172 F.3d 1068, 1077 (8th Cir. 1999)

will use the page numbers assigned by the Clerk's Office.

(a pro se habeas corpus petition is deemed to have been filed on the date when it is delivered to prison officials for mailing).

Petitioner's current federal habeas corpus petition presents four grounds for relief. First, Petitioner claims that he was deprived of his constitutional right to effective assistance of counsel. (Petition, [Docket No. 1], p. 6.)  However, the petition offers no explanation for this conclusory claim.  Second, Petitioner claims that he was deprived of his constitutional right to due process when the trial court judge denied his motion for a mistrial based on the prosecutor's failure to disclose the pre-trial photo line-up.[5]  Third, Petitioner claims that he was convicted in violation of his constitutional right to substantive due process, "because there was no DNA ever taken in the case to help prove petitioner's innocence."  (Id.) Finally, Petitioner claims that his conviction should be set aside, because of "[p]erjured testimony by the alleged victim."  (Id.)

The Court finds that none of Petitioner's current claims for relief can be addressed on the merits,[6] because this action is barred by the one-year statute of limitations that applies to federal habeas corpus petitions.

_____

[5]   The second ground for relief also includes an unexplained assertion that "Petitioner's Fourth Amendment right against illegal search and seizure were violated, due to the fact that the arresting officer(s) had absolutely no evidence to arrest, [but] still arrested petitioner, and took him to jail."  (Petition, p. 7.)  It is unclear how this vague statement supposedly pertains to Petitioner's principal claim in Ground Two regarding the non-disclosure of the photo line-up.  Furthermore, Petitioner's contention that there was "absolutely no evidence" supporting his arrest is plainly contradicted by the record, because an eyewitness to the crime recognized him and gave his name to the police.  See n. 2, supra.

[6]The lapse of the one-year statute of limitations notwithstanding, based on the record before this Court currently, it appears highly doubtful that petitioner could have prevailed even if the Court were not barred from considering the substance of Petitioner's arguments.

## II. DISCUSSION

28 U.S.C. § 2244(d) establishes a one-year statute of limitations for habeas corpus

petitions brought pursuant to § 2254.  The statute provides as follows:

> "**(d)(1)**  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> **(d)(2)** The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

In this case, there is nothing in Petitioner's submissions which suggests that §

2244(d)(1)(C) could be applicable here.  In other words, there is no suggestion that any of

Petitioner's claims are based on any new constitutional ruling that is retroactively applicable

to cases on collateral review.  The Court also concludes there is nothing in the record to

support a finding  that the starting date of the one-year limitations period was delayed

pursuant to clauses (B) and (D) of § 2244(d)(1).

**(a) 28 U.S.C. § 2244(d)(1)(B)**

Should Petitioner be attempting to argue that he was prevented from raising some of his current habeas claims in a timely manner because of an "impediment... created by State action in violation of the Constitution or laws of the United States," as contemplated at § 2244(d)(1)(B), he has <u>not</u> identified any such impediment, and it clearly appears from his own submissions that no such impediment ever existed with regard to any of the four grounds for relief listed in the current petition.

Petitioner has made no effort to suggest that the state impeded his ability to raise his first ground for relief – ineffective assistance of counsel – in a timely manner, and the Court cannot find any possible rationale for such an argument in the present record.

Turning to Ground Two, it might be construed that the Petitioner is seeking to argue that the state impeded his ability to challenge the photo line-up, because the state did not disclose the photo line-up until his trial was underway.  However, once the photo line-up was disclosed at trial, any "impediment" resulting from the previous non-disclosure ceased to exist.  Petitioner was able to challenge the non-disclosure of the photo line-up in his subsequent direct appeal, and he obviously could have raised the same challenge in a federal habeas petition at any time thereafter.

Petitioner might also appear to be arguing that the state impeded his DNA evidence claim, (Ground Three), but any such argument is clearly unsupportable.  According to Petitioner, the State never acquired any DNA evidence.  Petitioner obviously believes the State <u>should have</u> acquired DNA evidence, but the State did not prevent Petitioner from advocating that proposition.  Petitioner could have challenged the State's failure to obtain DNA evidence <u>at any time</u> during or subsequent to his trial.  The State did nothing to prevent or impede Petitioner from raising such a challenge in a timely habeas petition.

7

The State also did nothing to prevent Petitioner from raising his "perjured testimony" claim, (Ground Four), in a timely petition.  Petitioner apparently believes that the perjured testimony is "newly discovered evidence" that the State should have disclosed.  However, (for reasons discussed immediately below),  the Court rejects the notion that there is new evidence of perjured testimony.  Therefore,  the starting date of the one-year limitations period cannot be affected by any alleged impediment pertaining to any such evidence. Simply put, the State did not impede Petitioner's ability to present his "perjured testimony" claim in a timely habeas petition.

### (b) 28 U.S.C. § 2244(d)(1)(D)

The Court also finds that none of Petitioner's current habeas corpus claims are based on any newly discovered evidence that could delay the starting date of the one-year limitations period pursuant to § 2244(d)(1)(D).  Petitioner has not suggested that his ineffective assistance of counsel claim, (Ground One), is based on any new and previously undiscoverable evidence.  Nor has Petitioner cited any new evidence in support of his photo line-up claim, (Ground Two), or his DNA claim, (Ground Three).  All of the evidence relevant to those three claims was fully known to Petitioner by the conclusion of his trial.

Petitioner has tried to argue that his perjured testimony claim, (Ground Four), is based on evidence that did not come to light until September 2010.  According to Petitioner, he discovered in September 2010 that the victim in his 1997 criminal case had given false testimony at his trial.  This "perjured testimony" supposedly was disclosed to Petitioner by a state court judge who was considering a challenge to Petitioner's ongoing civil commitment.  Petitioner claims that he learned about the victim's supposed "perjury" when that judge made the following observations in connection with the proceedings in the civil

8

commitment case:

> "'Additionally, this Court is unaware of any objection, under the rules of evidence that would allow [Petitioner's] trial counsel to object to a witness on the basis of 'lying.' Counsel could have attempted to impeach M.A.N. [i.e., the victim] but his decision not to cross-examine M.A.N. is considered by this Court to be trial strategy in light of M.A.N. being the victim in [Petitioner's] only successfully prosecuted criminal sexual conduct case and because M.A.N. was a very strong witness.'"

(Petition, p. 8, quoting "In the Matter of the Civil Commitment of Raymond L. Semler, Court File No: 18-PR-05-001006. Hearing held on June 21st, 2010.")

This statement attributed to a state trial court judge does <u>not</u> constitute new evidence showing that the victim committed perjury at Petitioner's criminal trial. The judge merely observed that under Minnesota's rules of evidence, a party cannot object to a witness's testimony simply because the party may believe the witness is lying; rather, the Court was simply observing that any belief an adverse party may have as to the veracity of a witness's testimony against them is able to be tested upon cross-examination of that witness. Moreover, in the Petitioner's case, the state court judge was merely observing that Petitioner's counsel had chosen for tactical reasons not to cross-examine the victim witness. This innocuous observation could not possibly be viewed as <u>new</u> evidence or any sort of judicial determination showing that the victim committed perjury at Petitioner's trial. Indeed, the statement quoted by Petitioner plainly shows that the state court judge actually considered the victim to be "a very strong witness."

In addition to the "new evidence" presented in the petition itself, Petitioner has also filed a memorandum that presents a six-part list of "Newly Discovered Evidence." This list is as follows:

"(1) witness as an alibi sought by a private investigator out of Rhode Island,

9

on behalf of petitioner proving his innocence; (2) cell phone records which would also prove petitioner's innocence; (3) perjured testimony from the alleged victim during a civil commitment 'trial' in 2005; (4) through advanced technology, petitioner must have access to DNA testing to prove his innocence; (5) violations of due process; (6) violations of substantive due process."

("Petitioners [sic] Response to Courts [sic] Order of April 18, 2011, [Docket No. 5], [hereafter "Petitioner's Memorandum"], p. 5.)

To begin, items (5) and (6) on this list – "violations of due process," and "violations of substantive due process" -- are not "new evidence" at all; they are merely legal conclusions. Item (3) – "perjured testimony from the alleged victim" – presumably is the same alleged "new evidence" of perjury that has already been rejected for the reasons discussed immediately above.

The remaining three items on Petitioner's list are equally wanting. Item (1) – the "alibi witness sought by a private investigator out of Rhode Island" – cannot be viewed as relevant new evidence for purposes of § 2244(d)(1)(D), because (i) Petitioner has not identified the witness, (ii) Petitioner has not described how the witness supposedly would prove his innocence, and most importantly, (iii) Petitioner has not explained why the unidentified witness was not called to testify at his trial, (i.e., why the witness's expected testimony – whatever it might be – is "new," and was not previously discoverable).

Item (2) – the purported "cell phone records" – also affords no support to Petitioner's cause, because he has not shown that he actually possesses any cell phone records that would support his claim of innocence; but he merely postulates that such records exist. Furthermore, the existence any such records were as knowable to Petitioner at the time of his trial, (fourteen years ago), as they are today. Thus, the cell phone records referred to

in Petitioner's Memorandum cannot be considered "new evidence" for purposes of § 2244(d)(1)(D).

Item (4) – the so-called "DNA evidence" – is likewise dubious because Petitioner has plainly stated that there is <u>no</u> such evidence.  Petitioner cannot credibly contend that any of his claims are based on newly discovered DNA evidence while at the same time contending that there is no DNA evidence.  If Petitioner means to contend that the <u>absence</u> of DNA evidence is new evidence, that contention is likewise frivolous.  As already noted, the absence of DNA evidence is nothing new; that has been known since before Petitioner's trial began.

In sum, Petitioner has not properly identified before this Court any state-created impediment, any newly discovered evidence, or any new rule of law, that could postpone the starting date for the one-year statute of limitations pursuant to § 2244(d)(1) (B), (C), or (D).  Thus, the Court finds that the one-year limitations period began to run in this case, pursuant to § 2244(d)(1)(A), when Petitioner's judgment of conviction "became final by the conclusion of direct review or the expiration of the time for seeking such review."

### (c) 28 U.S.C. § 2244(d)(1)(A)

Petitioner's conviction and sentence now at issue were upheld by the Minnesota Supreme Court on direct appeal on September 22, 1998.  However, for purposes of 28 U.S.C. § 2244(d)(1)(A), the judgment did not become "final" until the expiration of the deadline for filing a petition for writ of certiorari with the United States Supreme Court. <u>Smith v. Bowersox</u>, 159 F.3d 345 (8th Cir. 1998) (state criminal convictions are not final for statute of limitations purposes until the deadline for seeking certiorari has expired), <u>cert</u>. <u>denied</u>, 525 U.S. 1187 (1999).  Certiorari petitions must be filed within 90 days after a final

11

adjudication by a state's highest court.  Sup. Ct. R. 13.1.  Thus, for purposes of §
2244(d)(1)(A), Petitioner's judgment of conviction became "final," and the one year federal
statute of limitations began to run in this case on December 22, 1998 – the day after the
expiration of the 90-day deadline for seeking certiorari review in the United States Supreme
Court.  The deadline for seeking federal habeas corpus relief therefore expired one year
later, on December 22, 1999.  Petitioner did not file his current petition, however, until April
4, 2011, which was more than eleven years after the limitations period had already expired.

### (d) Statutory tolling (28 U.S.C. § 2244(d)(2))

The Court recognizes that the habeas corpus statute of limitations is tolled pursuant
to § 2244(d)(2) when a prisoner files a state post-conviction motion, or otherwise seeks
collateral relief, in a procedurally proper state court proceeding.  The statute remains tolled
during the entire period of time that such collateral proceedings continue to be pending in
any state court, including the state appellate courts.  Mills v. Norris, 187 F.3d 881, 883-84
(8th Cir. 1999).

However, the tolling provisions of § 2244(d)(2) cannot aid Petitioner here, because
the statute of limitations had already long expired before he even filed his first post-
conviction motion in the state trial court.  The statute of limitations expired in December
1999, and Petitioner did not file his first state post-conviction motion until September 28,
2005.  Thus, the federal statute of limitations had already expired several years before the
first post-conviction motion was filed.  See Painter v. State of Iowa, 247 F.3d 1255, 1256
(8th Cir. 2001) ("by the time [petitioner] filed his state court application [for post-conviction
relief]... there was no federal limitations period remaining to toll, and the petition was
properly dismissed as time-barred").  In short, the statutory tolling provision cannot save

12

the present petition from being time-barred, because "[t]he one year AEDPA limit for federal habeas filing cannot be tolled after it has expired."  Jackson v. Ault, 452 F.3d 734, 735 (8th Cir. 2006); see also Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000) (state post-conviction motion filed after the § 2244(d)(1) statute of limitations has expired cannot toll the statute "because there is no period remaining to be tolled"), cert. denied, 531 U.S. 991 (2000); Bogan v. Moore, 55 F.Supp.2d 597, 600 (S.D. Miss. 1999) ("[o]nce the one year statute of limitations has expired, it cannot thereafter be tolled by a motion for post-conviction relief").

Petitioner may believe that his various state post-conviction motions did not merely toll the running of the statute, but somehow 'reset the clock,' giving him a fresh new one-year limitations period that did not begin to run until the last of his post-conviction cases was fully completed in March 2011.  That, however, is simply not the case.  "Section 2244(d)(2) only stops, but does not reset, the [AEDPA] clock from ticking and cannot revive a time period that has already expired."  Cordle v. Guarino, 428 F.3d 46, 48, n. 4 (1st Cir. 2005) (citations omitted).  Again, once the statute of limitations expired in this case, in December 1999, it could not thereafter be restarted by Petitioner's subsequent post-conviction motions.

**(e) Equitable tolling**

Finally, the Court has considered whether the doctrine of "equitable tolling" could save this action from being time-barred.  See Baker v. Norris, 321 F.3d 769, 771 (8th Cir. 2003) ("the one year AEDPA time limit... may be equitably tolled"), cert. denied, 539 U.S. 918 (2003); see also Holland v. Florida, 130 S.Ct. 2549, 2560 (2010) ("like all 11 Courts of Appeals that have considered the question, we hold that § 2244(d) is subject to equitable

tolling in appropriate cases").

However, the Eighth Circuit Court of Appeals has made it very clear that equitable tolling is available only "when <u>extraordinary circumstances beyond a prisoner's control</u> make it impossible to file a [habeas corpus] petition on time... [or] when conduct of the defendant has lulled the plaintiff into inaction." <u>Jihad v. Hvass</u>, 267 F.3d 803, 805 (8th Cir. 2001) (emphasis added); <u>see</u> <u>also</u> <u>White v. Dingle</u>, 616 F.3d 844, 847 (8th Cir. 2010) ("[u]nder the doctrine of equitable tolling, the AEDPA's statutory limitations period may be tolled if a petitioner can show that (1) he has been diligently pursuing his rights and (2) an extraordinary circumstance stood in his way"). ""[A]ny invocation of equity to relieve the strict application of a statute of limitations must be <u>guarded and infrequent</u>, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes.'" <u>Jihad</u>, 267 F.3d at 806 (quoting <u>Harris v. Hutchinson</u>, 209 F.3d 325, 330 (4th Cir. 2000)) (emphasis added).

Equitable tolling cannot be based on such commonplace and non-external excuses as prisoner ignorance or inadequate legal assistance. <u>Kreutzer v. Bowersox</u>, 231 F.3d 460, 463 (8th Cir. 2000), <u>cert</u>. <u>denied</u>, 534 U.S. 863 (2001). Instead, the petitioner must show that some specific and truly extraordinary event, of a wholly external nature, made it impossible for him to meet the statute of limitations deadline. <u>Id</u>.

In this case, Petitioner has briefly mentioned equitable tolling, (<u>see</u> Petitioner's Memorandum, p. 17), but he has not presented any cogent arguments or evidence to support the application of equitable tolling. Petitioner has merely repeated various arguments about state interference and new evidence, which the Court has already rejected for reasons discussed above. Petitioner has not identified any extraordinary

14

circumstances, of a wholly external nature, that could warrant equitable tolling.  It appears

that in this case, as in <u>Baker</u>, Petitioner simply was not "diligent in acting to protect his right

to federal habeas review of his conviction."  321 F.3d at 772.  Therefore, the tardiness of

this action cannot be excused based on equitable tolling.

## III.  CONCLUSION

For the reasons discussed above, the Court finds that this action is untimely.  The

one-year statute of limitations began to run in this case when the judgment that Petitioner

is challenging became "final" for purposes of § 2244(d)(1)(A).  That occurred in December

1998, and the statute of limitations expired one year later, in December 1999.  However,

Petitioner did not file his current federal habeas corpus petition until April 2011 – more than

eleven years after the statute of limitations deadline.  Furthermore, the tolling provision of

§ 2244(d)(2) cannot help Petitioner in this case, because he did not file his first state post-

conviction motion until September 2005, by which time the federal statute of limitations had

long since expired.  Nor has Petitioner demonstrated that he is eligible for equitable tolling.

Thus, the Court concludes that Petitioner's current § 2254 habeas corpus petition is time-

barred, and this action must be dismissed with prejudice pursuant to Rule 4 of the

Governing Rules.

## IV.  CERTIFICATE OF APPEALABILITY

A § 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition

unless he is granted a Certificate of Appealability, ("COA").  28 U.S.C. § 2253(c)(1); Fed.

R. App. P. 22(b)(1).  A COA cannot be granted, unless the petitioner "has made a

substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  To

make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find

the district court's assessment of the constitutional claims debatable or wrong." <u>Slack v.</u>

<u>Daniel</u>, 529 U.S. 473, 484 (2000).

In this case, the Court finds that it is highly unlikely that any other court, including

the Eighth Circuit Court of Appeals, would decide Petitioner's claims any differently than

they have been decided here.   Petitioner has not identified, and the Court cannot

independently discern, anything novel, noteworthy or worrisome about this case that

warrants appellate review.   It is therefore recommended that Petitioner should <u>not</u> be

granted a COA in this matter.


## V.  RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.  Petitioner's application for a writ of habeas corpus, (Docket No. 1), be **DENIED**;

2.  This action be **DISMISSED WITH PREJUDICE**; and

3.  Petitioner should **NOT** be granted a Certificate of Appealability.


Dated: June 15, 2011

s/Leo I. Brisbois
LEO I. BRISBOIS
United States Magistrate Judge

## N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by June 30, 2011**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof.  Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules.  Failure to comply with this procedure may

operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.